[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
This matter is an action claiming a dissolution of marriage, joint custody of the minor children, support, alimony and other relief. The answer date is September 18, 2001. Both parties have appeared through counsel and the case was tried on a limited contested basis before the Superior Court at Hartford, Connecticut.
The court finds that service was made in accordance with the provisions of the statutes. The court further finds that it has jurisdiction by virtue of the residence of the parties in the state of Connecticut. The court finds that the parties were married on December 28, 1991 in Nashville, Tennessee. There were two minor children issue of this marriage, Addie Nix, born February 1, 1996 and Ansley Nix, born August 4, 1998. All statutory stays have expired and the remaining allegations of the complaint dated August 21, 2001 are found to have been proven.
The court makes the following additional findings relevant to its decision in this matter.
The plaintiff's maiden name was Amy Owen. She is currently thirty-five years of age. She is a college graduate. At the time she and the defendant met she was employed by Dunn Bradstreet in Atlanta, Georgia. Subsequent to her employment at Dunn Bradstreet she worked in the area of pharmaceutical sales. She worked in that capacity until the birth of the first child of the parties which was in 1996. At that time the parties jointly decided that Ms. Nix should stay home and care for the child of the parties.
Plaintiff's "Exhibit 6" which is a historical record of her social security earnings indicates that in 1995 she was taxed on earnings of $45,823.00. In 1996 her earnings were $35,275.00. The plaintiff has returned to work beginning on or about February of 2002. She is working on a part-time basis and reports earnings of $385.00 per week gross. She is again working in the field of pharmaceutical sales. In addition to her CT Page 16112 salary, she earns commissions which are reported to be $84.00 per week.
The parties lived together for a brief time prior to the time of their marriage. On or about June of 1991, the plaintiff purchased a home in the Atlanta, Georgia area. The home was purchased with a deposit given to the plaintiff by her parents in the amount of $35,000.00. The parties lived in that home for approximately five years. The home was sold in September of 1996, at which time the parties moved in with the defendant's parents.
Thereafter, the defendant's parents gave the parties a parcel of land valued by the defendant at $25,000.00. The parties set out to build a new home on that land which took approximately eight months. Once completed, they lived in that home for approximately two years, at which time the defendant received an offer to relocate to Connecticut with his employer Fleet Capital. The defendant accepted that offer and the parties moved to Connecticut on or about September of 1999.
The property the parties had built was sold at a net profit of approximately $100,000.00. Upon relocating to Connecticut the parties purchased the present family home in Wethersfield, Connecticut. The purchase price was $220,000.00 and there was a first mortgage in the original amount of $175,000.00. The defendant also received a relocation bonus. The bonus and the profit from the prior house sale were used as a down payment and as the basis for an investment account discussed below.
The defendant Robert Nix is thirty-seven years of age. He is a college graduate, and a certified public accountant. His employment background includes having worked at the Arthur Anderson accounting firm and subsequently at Fleet Capital. He worked at Fleet from 1997 until 2001. His income increased steadily throughout that period of time having started at $46,260.00 in 1997 and reaching a high point of $154,483.00 in 1999. In the year 2000 he earned approximately $105,500.00 and in 2001 he earned $113,000.00. (Plaintiff's "Exhibits 12 through 22", inclusive. Plaintiff's "Exhibit 71."), At the end of 2001, the defendant lost his job at Fleet. He received some severance pay, and also began working as a consultant for Company Finance. He was paid $7,500.00 a month as a consultant. His consulting contract ended. Mr. Nix then received unemployment compensation for a period of time. He was receiving $420.00 per week gross as an unemployment compensation benefit.
Shortly following the conclusion of evidence at trial, Mr. Nix was able to secure employment with Merrill Lynch. In a Letter transmitted to the court with the approval of counsel, it as indicated that Mr. Nix will receive an annual salary of $95,000.00 with the possibility of commission. The employment was effective Monday, December 2, 2002. CT Page 16113
The parties were possessed of substantial financial assets during the marriage. In the period from October 31 of 2000 through October 31 of 2001, a review of the Quick Riley Financial Services accounts which had been submitted to the court show that they had a total equity in the account in the form of securities in other investments which reached a high of $166,067.00. (Plaintiff's "Exhibit 35"). In the time between February of 2000 and September of 2000, that account fluctuated from the high as aforementioned to a low of $116,114.00. The percentage of the account that consisted of mutual funds was relatively stable.
The margin balance of that account increased dramatically in February/March of 2000. The account went from $5,124.00 in February 29, 2000 to $64,239.00 on March 31, 2000. (Plaintiff's "Exhibits 35" and "36"). From that time forward, the margin account always had a balance and the numbers varied in amount from the $5,124.00 as aforementioned to a high of $97,194.00 on May 31, 2000. All margin account balances are negative, that is to say liabilities on the account. (Plaintiff's "Exhibit 38")
On September 29, 2000, the margin account had a balance of $57,455.00. The portfolio account had a positive balance of $189,016.00 and the total equity in the account was $131,560.00. Within the thirty days immediately following that, the net equity in the account went to $117,496.00. The bulk of that loss is attributed to a stock called J.D.S. Uniphase Corp. which lost 80% of its value in that brief period. Eighty (80%), percent of value represented a loss of $29,638.00. That particular security had been actively traded in this account for some months.
In the month immediately following that, the value of the account dropped again from $117,496.00 to $70,783.00. That loss resulted from a drastic reduction in the value of the mutual funds held by the parties. The mutual funds at that time represented almost 83% of the overall account. From that time forward, there was a relatively constant diminution of the value of the account of the parties. In the statement for February, 2001 as an example, there was a loss in the mutual fund account in the amount of $13,641.00. At the end of that month, the value of the account was approximately $52,145.00. The margin account expenditures thereafter were relatively insignificant even though there was considerable day trading activities and transaction activities both prior to and subsequent to that date.
There is not sufficient evidence to support the claim that the bulk of the money invested by the parties in these accounts was lost due to day trading transactions. CT Page 16114
The other major asset owned by these parties is the marital home. As aforementioned, the home had been purchased in 1999 for $220,000.00. There was considerable evidence and dispute with respect to the present value of the home. The plaintiff's appraiser, Mr. Peter Marsele was of the opinion that the house was worth $230,000.00 as of April 2002 and $240,000.00 as of the present date. The defendant submitted an appraisal from Keith W. Burritt which offered the opinion that the house had a fair market value of $267,000.00 as of October 1, 2002. Other evidence was submitted as well in support of the parties' respective positions as to the value of the property.
After having reviewed the documentary evidence as well as the testimony of the parties and expert opinions, the court finds that the fair market value of the marital residence is $260,000.00.
The court has considered the statutory criteria with respect to custody, parental access, alimony and property settlement. Based upon the facts as found above, the court enters the following orders:
The marriage of the parties is hereby dissolved.
Joint custody of the minor children shall be vested in both parties. The primary residence of the children shall be with the plaintiff. The defendant shall enjoy parenting time each Monday and Wednesday evening from 4:00 p.m. to 7:00 p.m. During such times as the children are not in school, including but not limited to summer vacation, the Wednesday evening visit may be extended to Thursday morning. The defendant shall transport the children to school, daycare or wherever appropriate Thursday mornings on such occasions.
The defendant shall enjoy parenting time every other weekend from Friday at 5:00 p.m. until Sunday at 8:00 p.m. On any weekend not otherwise enumerated below which is followed by a Monday holiday, the visitation shall end on Monday at 4:00 p.m.
The parties shall alternate the winter and spring vacations of the minor children.
The parties shall alternate the Thanksgiving holiday from the Wednesday preceding the holiday until the Sunday following the holiday. The holiday shall be spent in even numbered years with the defendant, in odd numbered years with the plaintiff.
The parties shall alternate the Christmas holiday. The plaintiff shall CT Page 16115 enjoy the even numbered years by having the children from 4:00 p.m. on the last day of school preceding the vacation until noon on Christmas day. The other party shall have the children from noon on Christmas day until 4:00 p.m. on New Year's Day.
The parties shall alternate all major legal holidays including Easter, Memorial Day, Labor Day, Fourth of July, and Halloween.
The parties shall enjoy Mother's Day and Father's Day each year with the minor children as appropriate.
Each of the parties may take a summer vacation with the children for a period not to exceed two weeks upon notice to the other.
The defendant shall pay child support in the amount of $310.00 per week. In addition, he shall pay 56% of any unreimbursed or uninsured medical costs as per the child support guidelines. The defendant shall maintain medical insurance as is available through his employment for the benefit of the minor children. He shall notify the plaintiff of such insurance coverage and transmit to her any documentation or paperwork in order for the children to avail themselves of said coverage. He shall continue his present coverage in effect until such time as the children are covered under the new plan.
If the cost of said medical insurance is substantially greater than that which the plaintiff was carrying as a result of his employment at Fleet, he may submit the issue to the court for consideration de novo.
The defendant shall pay alimony in the amount of $250.00 per week for a period of five years. The length of the alimony shall not be subject to modification.
The defendant is ordered to quit claim his right, title and interest in the property located at 854 Ridge Road, Wethersfield Connecticut to the plaintiff. In exchange for said quit claim, the plaintiff will pay to the defendant the sum of $40,000.00. It is contemplated that said sum shall be secured from the proceeds of refinancing of the present mortgage. In the event that said mortgage is refinanced, the defendant will pay the sum of $200.00 per month toward the interest on said mortgage for a period of six years. The plaintiff shall be obligated to make a diligent and good faith effort to apply for said refinance. The refinancing shall be accomplished, and the aforementioned sums paid on or before 150 days from the date of this judgment. In the event that the plaintiff is unable to refinance said property, or is otherwise unable to pay said sum to the defendant within the time period provided herein, the property shall be CT Page 16116 sold and the proceeds divided. The distribution shall be that the defendant shall receive the first $40,000.00 of the net proceeds, and the plaintiff the balance of said proceeds. In the event the property is sold the defendant shall not receive net proceeds greater than the plaintiff.
The liquid assets of the parties shall be divided as follows:
The plaintiff shall have the following:
 Quick Reilly rollover $4,769.00 Quick Reilly IRA 5,348.00 Fleet account 12,000.00 Quick Reilly Joint Account 15,885.00
The defendant shall have the following:
 401K rollover 4,071.00 401K 21,900.00 Schwab account 9,742.00 Quick Reilly Joint Account 2,000.00
The court has considered the claims made by each of the parties with respect to the contributions from their respective families and the assets held prior to the marriage in making the above orders.
The defendant shall be entitled to retain his post-September 2001 401k contributions which are in the approximate amount of $6,998.00.
The parties shall each retain the respective motor vehicle in their possession.
The parties shall also retain the bank accounts currently in their name free from any claim of the other, unless specifically divided in the foregoing orders.
The defendant shall maintain life insurance in the face amount of $250,000.00 for the benefit of the plaintiff and the minor children, for such time as he has financial obligations under the terms of this judgment.
The court will defer an educational support order in accordance with the provisions of Public Act 02-128.
The court finds an arrearage of the pendente lite child support and alimony orders in the amount of $3,521.00. Said arrearage shall be paid CT Page 16117 on or before thirty days from the date of this judgment. The court will retain jurisdiction as to the issue of arrears.
Each party shall be responsible for the debts listed on their respective financial affidavits.
Each party shall pay their respective counsel fees.
The parties shall each declare one child as a dependent for income tax purposes.
BY THE COURT
______________________ Antonio C. Robaina, J. CT Page 16118